v.

Gordon JOHNSON, Director of the Illinois Department of Children and Family Services, Defendant.

No. 88 C 5599.

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1989.

Michael L. Brody, Jeanne L. Nowaczewski, Yvonne E. Mena, Bradley H. Lippitz, Schiff, Hardin & Waite, Benjamin S. Wolf, The Roger Baldwin Fdtn. of the ACLU, Inc., Chicago, for plaintiffs.

Susan Getzendanner, Christina M. Tchen, Thomas J. Wiegand, Skadden, Arps, Slate, Meagher & Flom, Chicago, for defendant.

MEMORANDUM OPINION

GRADY, Chief Judge.

This case, involving plaintiff class members' claims under the Fourteenth Amendment and the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–28, 670–76, comes before us on the motion of defendant Gordon Johnson

("Johnson") for a protective order pursuant to Federal Rule of Civil Procedure 26(c), as well as plaintiffs' motion for an order prohibiting interference with interviews. We grant plaintiffs' motion and deny defendant's motion.

FACTS

Named plaintiffs, B.H., C.H., J.E., C.Z., E.G., O.G., S.G., C.G., P.G., and A.G. represent the class of all children who, as of the date the plaintiffs filed this case, have been or will be in the custody of the Illinois Department of Children and Family Services ("DCFS"), and who have been or will be placed somewhere other than with their parents. Johnson is the Director of DCFS, and plaintiffs have sued him in his official capacity. The basis of the complaint is that Johnson's policies and practices have resulted in mental and physical damage to plaintiffs because Johnson has not placed them in safe and stable homes in a suitable time and manner.

The present motions involve a discovery dispute between the parties. Plaintiffs' counsel asks for the opportunity to interview low-level employees of DCFS, including caseworkers. DCFS issued an Information Transmittal on June 28, 1989 ("Information Transmittal"), regarding discussions with opposing counsel.[1] The Information Transmittal forbids direct contact between DCFS employees and opposing counsel without prior approval of the Office of Legal Services and/or counsel representing DCFS. Defendant seeks a protective order supporting the Information Transmittal.

Defendant urges that the protective order is necessary to prevent *ex parte* contacts with DCFS employees by plaintiffs' counsel, in violation of DR 7–104 of the Code of Professional Responsibility. Model Code of Professional Responsibility DR 7–104; Ill.Rev.Stat., ch. 110A, Rule 7–104. Plaintiffs, on the other hand, argue that no ethical principle justifies the Information Transmittal, because DCFS is not a party to this action and, even it were, DR 7–104 does not apply to caseworkers and similarly situated DCFS employees. Plaintiffs further argue that the Information Transmittal violates the First Amendment rights of DCFS employees.

DISCUSSION

The Model Code of Professional Responsibility prohibits direct contact between an attorney and an opposing party without the consent of opposing counsel:

(A) During the course of his representation of a client a lawyer shall not

(1) Communicate or cause another to communicate on the subject of the repre-

---

1. The Information Transmittal provides:

The Department, or the Director and others as representatives of the Department, frequently is named as defendant in class action and individual damages law suits in state and federal court. For example, the Department currently is the defendant in several inter-related class action law suits brought by the ACLU, the Legal Assistance Foundation and the Cook County Public Guardian challenging the Department's substitute care programs and policies and seeking system-wide injunctive relief. In addition, there currently are several individual actions in which the plaintiffs, who are represented in certain cases by the Cook County Public Guardian or other private attorneys, are seeking substantial damage awards from the Department.

It is possible that opposing counsel in these law suits would seek to contact Department staff persons to solicit information. Any such information or statements by individual employees, under certain circumstances, may be used to bind the Department or otherwise hold the Department liable, and may result in the imposition of an injunction or substantial damage awards against the Department. Therefore, it is the policy of the Department that individual DCFS employees should not have any direct contact with the opposing counsel in such law suits without prior approval of the Office of Legal Services and/or the legal counsel representing the Department.

Any Department employee who is contacted by representatives of the ACLU, Legal Assistance Foundation, Cook County Public Guardian or other legal counsel representing plaintiffs in a class action or individual damages action, should immediately contact the Office of Legal Services for further direction. The only exception is when the inquiry is in regard to an individual juvenile court matter, rather than a class action or individual damages action. If the nature of the contact or inquiry is unclear, Department employees should first seek the direction of the Office of Legal Services before speaking to the person making an inquiry.

Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion to Lift Order Restraining Speech, Exhibit A.

sentation with a party he knows to be represented by a lawyer on that matter unless he has prior consent of the lawyer representing such other party or is authorized by law to do so. . . .

Model Code of Professional Responsibility DR 7–104; Ill.Rev.Stat., ch. 110A, Rule 7–104. The new Model Rules of Professional Conduct also proscribe such contact.[2] Model Rule of Professional Conduct 4.2. The task of identifying who is a party for purposes of DR 7–104 can be more difficult where the party is an organization and the person sought to be interviewed is an employee of that organization.

Plaintiffs argue that we do not encounter that problem here because DCFS is not a party to this action, and, therefore, its employees cannot be parties. We find this argument unpersuasive as the plaintiffs have *specifically* sued Johnson in his official capacity. *See* Plaintiffs' Second Amended Complaint, ¶ 8. "[A]n official-capacity suit is in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). The case plaintiffs have offered to the contrary, *K.H. v. Johnson*, 1989 WL 105279, 1989 U.S.Dist. Lexis 10515, No. 87 C 9833 (N.D.Ill. Sept. 6, 1989), is a suit against defendant in his personal capacity and on that basis is distinguishable.

▪ Rejecting plaintiffs' argument that DCFS is not a party, we confront DR 7–104 directly with respect to the facts of this case. Several courts, confronted with situations similar to this, have adopted the three-part "Managing–Speaking" test. *See Chancellor v. Boeing Co.*, 678 F.Supp. 250, 253 (D.Kan.1988); *Wright by Wright v. Group Health Hosp.*, 103 Wash.2d 192, 691 P.2d 564 (1984). This test provides three categories of employees which the court should exclude from *ex parte* contacts with opposing counsel pursuant to DR 7–104: (1) those with managerial responsibilities; (2) those whose act or omission can impute civil or criminal liability to an organization; and (3) those whose statements constitute admissions on the part of the organization. *See* Model Rule 4.2 Comment 2. We will not adopt this test because, now that we have tried to apply it to the facts of a particular case, we find it too expansive. It leaves few, if any, employees outside the reach of DR 7–104.[3] Other courts have adopted different tests. *See, e.g., Frey v. Department of Health and Human Services*, 106 F.R.D. 32, 35, 36 (E.D.N.Y.1985) (balancing "the burdens and dangers of informal interrogation of employees ... against the degree to which the proposed questioning will aid in the search for truth"); *Morrison v. Brandeis University*, 125 F.R.D. 14, 18 (D.Mass.1989) (balancing plaintiff's need to gather information on informal basis against defendant's need for effective representation). We will not specifically adopt one of these tests, but instead will make a determination based on the facts of the case before us. *See Upjohn Co. v. United States*, 449 U.S. 383, 396–97, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981) (adopting a "case-by-case" approach to determine when the attorney-client privilege applies to employees of a party).[4]

**2.** The Model Rules provide:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Rule 4.2. The Illinois Supreme Court has not yet adopted the Model Rules of Professional Responsibility, although it has adopted the Model Code of Professional Responsibility. We note the Model Rules here for their persuasive value. *See In Industrial Gas Antitrust,* No. 80 C 3479, 1986 WL 1846 (N.D.Ill. Jan. 28, 1986).

**3.** Defendant's counsel consistently cites our opinion in *Oak Industries v. Zenith Industries,* No. 86 C 4302, 1988 WL 79614 (N.D.Ill. July 27, 1988), in support of their assertion that we have adopted the "Managing–Speaking" test. *See* Reply in Support of Defendant's Motion for Protective Order and In Opposition to Plaintiff's Motion for Order Prohibiting Interference with Interviews at 5. In *Oak Industries,* we quoted the test for what we felt was its persuasive value, but neither applied nor adopted it.

**4.** In *Upjohn,* the Court would not permit discovery of information the corporation's counsel gathered from corporate employees. However, the Court stated that the government "was free to question" these employees itself. 449 U.S. at 396, 101 S.Ct. at 686.

Plaintiffs cite *Vega v. Bloomsburgh*, 427 F.Supp. 593 (D.Mass.1977), in support of their motion. Although the facts of *Vega* are similar to those in the case at bar, we decline to adopt the reasoning of that opinion. In *Vega*, the court ordered the defendant to rescind a memorandum restraining employees from speaking to opposing counsel. The court stated that "[t]here has been no showing, however, that the individual employees are represented by the Attorney General in this litigation, that their interests are adverse to those of the plaintiffs, or for that matter consistent with those of the defendants." *Id.* at 595. It is true that the same can be said of at least some of the caseworkers in the present case. While defendant claims his counsel represents all employees, plaintiffs assert that many caseworkers disagree with defendant's policies and have come forward, prior to Johnson's issuing the Informational Transmittal, to tell plaintiffs' counsel about alleged problems in the system. Caseworkers who have come forward to discuss problems with the system do not have "interests" [5] consistent with those of the defendant, and, thus, under the logic of *Vega*, would not be parties to this action for purposes of DR 7–104.

We think the logic of *Vega* could lead to some unjust results. For instance, vice-president A might disagree with the policies of fellow vice-president B. Counsel in an action questioning the policies of B could then interview vice-president A because his "interests" are adverse to those of B and, since he disagrees with B, are consistent with those of the plaintiff. But we think a senior vice-president, regardless of his views, is a "party" under DR 7–104 and that an attorney who interviewed him about the subject matter of the suit without the consent of opposing counsel would be in violation of the Canon.

■ It is likely that plaintiffs would be able to obtain information useful to their claims more easily if we permitted them to interview the caseworkers without the presence of defense counsel. Yet, we are concerned about the ability of caseworkers to bind defendant with their out-of-court statements under Federal Rule of Evidence 801(d)(2)(D). Rule 801(d)(2)(D) provides that a statement is not hearsay if "the statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." Fed.R.Evid. 801(d)(2)(D). Under the plain language of the rule, it seems that plaintiffs could take statements from caseworkers who are agents or servants of DCFS and offer those statements in evidence without calling the caseworkers as witnesses. These statements would concern matters within the scope of the caseworkers' employment made during the existence of the employment relationship.

The case law supports this broad reading of the rule. As the Seventh Circuit explained in *Nekolny v. Painter*, 653 F.2d 1164, 1172 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982), "Rule 801(d)(2)(D) takes the broader view that an agent or servant who speaks on any matter within the scope of his agency or employment during the existence of that relationship, is unlikely to make statements damaging to his principal or employer unless those statements are true." In another case, *United States v. Chappell*, 698 F.2d 308 (7th Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983), the court specifically held that statements made by an employee-witness to the Securities and Exchange Commission regarding the books he kept as the defendant's accountant were admissible under Rule 801(d)(2)(D). The employee did not make these statements in the normal course of his employment as a bookkeeper; however, the court held that the statements were made "concerning" the witness' employment. We see no distinction between the proposed caseworkers' state-

---

**5.** It is not clear what the *Vega* court meant by the "interests" of the individual employees. It would seem that they had no legal interests in the litigation, since they were not being sued in either their individual or official capacities. It appears that the court may have been referring to the sympathies or beliefs of the employees, which seems to us irrelevant to the question of whether they should be considered "parties" for purposes of DR 7–104.

ments to counsel and the statements of the bookkeeper in *Chappell*.

The court in *Frey* specifically addressed the difficulties of dealing with Rule 801(d)(2)(D) when low level employees are not named as parties to an action, although their statements fulfill the technical requirements of admissions by party opponents. In *Frey*, plaintiff's counsel wished to interview Social Security Administration employees to help establish plaintiff's employment discrimination case. 106 F.R.D. at 33. The court used an "alter ego" test whereby only "those individuals who can bind it [the defendant] to a decision or settle controversies on its behalf" would be considered parties for purposes of DR 7–104. *Id.* at 35. The court further explained that, as far as Rule 801(d)(2)(D) was concerned, the parties could not have their cake and eat it too. If an employee is not a party for purposes of DR 7–104, his or her statements cannot be admissions of a party-opponent under Rule 801(d)(2)(D). *Id.* at 37–38. As the court stated:

> [s]uffice it to say that the SSA [Social Security Administration] employees who may be reached by ex parte contact are not considered agents of the SSA with authority to "bind" the agency under DR 7–104 or capable of making admissions on behalf of the SSA under the Federal Rules of Evidence.

*Id.* at 38.

*Frey* is an intelligent reconcillation of the requirements of DR 7–104 and Rule 801(d)(2)(D). There are over one thousand caseworkers employed by DCFS. To say that one thousand people can make out-of-court statements that would be received as admissions of the defendant seems absurd. We doubt that the framers of Rule 801(d)(2)(D) intended it to have so broad an application. In fact, we believe statements gathered by opposing counsel in this informal manner, if received into evidence as admissions, would be unfairly prejudicial to defendant under Federal Rule of Evidence 403. Application of Rule 403 is especially appropriate here where other evidence, such as deposition or live testimony, is available to plaintiffs. *See Gross v. Black & Decker (U.S.), Inc.*, 695 F.2d 858, 863 (5th Cir.1983). Thus, although we will al-

low plaintiffs to conduct the interviews, we will not permit them to use such informally gathered evidence as admissions of party-opponents.

CONCLUSION

We deny defendant's motion for a protective order and grant plaintiffs' motion prohibiting defendant's interference with employee interviews.