Helene ORLOWSKI, Melba J. Koch, Margaret Mrozowski, Carol Ann Schmall, Alma L. Aguirre, Roann D. Keaty, Plaintiffs,

v.

**DOMINICK'S FINER FOODS, INC., Defendants.**

No. 95 C 1666.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 9, 1996.

Jeffrey I. Cummings, Paul Strauss, Davis, Miner, Barnhill and Galland, P.C., Chicago, IL, Jeffrey Friedman, Friedman & Holman, Chicago, IL, for Plaintiffs.

Mark Lies, II, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter comes before the Court on Defendant's Motion For Protective Order and Plaintiff's Motion to File Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15. For the following reasons, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted.

## BACKGROUND

Plaintiffs bring this sex discrimination suit against Defendant, Dominick's Finer Foods, Inc. ("Dominick's"), as a class action "on behalf of women who have worked in the Dominick's stores." (Plaintiffs' Memorandum in Opposition to Defendant's Motion for Protective Order [Pls.' Mem. Opp'n] at 1.) They allege that Dominick's has discriminated against them in the following manner:

(1) by failing and refusing to provide promotional opportunities to female [*sic*] on the same basis as men; (2) by failing and refusing to consider females for promotions on the same basis as males are considered; (3) by failing and refusing to provide females the work experience and training to qualify them for more desirable opportunities on the same basis as males are provided such experience and training; (4) by placing women in sex segregated, predominantly female positions and failing to and refusing to place women in sex segregated predominantly male positions;

(5) by transferring women to different store locations for purposes and on grounds that are not applied to males; (6) by discouraging and deterring women from requesting promotional opportunities; (7) by failing to provide women with accurate notice of employment opportunities and hiring procedures; (8) by maintaining and fostering a reputation for discriminatory conduct which deters women from pursuing promotional opportunities with Dominick's; (9) by establishing and maintaining arbitrary and subjective requirements for job assignment and promotion which have the effect of excluding qualified women and which have not been shown to have any significant relationship to job performance or be necessary to the safe and efficient conduct of Dominick's business; and (10) by failing and refusing to take reasonable and adequate steps to eliminate the effects of Dominick's past discriminatory practices.

(Complaint at 7–8.)

On May 1, 1995, this Court granted Plaintiffs' unopposed Motion to File First Amended Complaint, thereby entitling Plaintiffs to add four named plaintiffs to the suit. On August 22, 1995, this Court granted Plaintiffs' Motion to Compel Defendant to Provide Complete Responses to Their Outstanding Interrogatories and Documents. Dominick's was required to turn over to Plaintiffs data base information, including the name, sex, race, educational background, and employment status of each Dominick's employee. This information provided the identities of approximately five thousand potential class members (female employees of Dominick's), to which Plaintiffs' counsel sent a form letter apprising them of the pending law suit. (De-

fendant's Reply in Support of Its Motion for Protective Order [Def.'s Reply Supp.] at 2.) The letter stated the nature of the suit, and requested that individuals with information pertaining to Dominick's alleged discriminatory practices contact Plaintiffs' attorneys.[1] (Pls.' Mem.Opp'n at 2.) As a result of this letter, many women contacted Plaintiffs' counsel, indicating that they were subjected to the described acts of discrimination. Plaintiffs' counsel communicated only with those women who responded to the letter. Some of the women who received the letter, and subsequently contacted the attorneys, were current managers. Plaintiffs assert that these contacts were inadvertent and that their counsel did not intend to direct the letter to female managers. (Id. at 3.)

Upon discovering that some managers had received Plaintiffs' letter, Dominick's brought its Motion for Protective Order, claiming that Plaintiffs' counsel violated the Northern District of Illinois' Rule of Professional Conduct 4.2 ("Rule 4.2"). Rule 4.2 prohibits a lawyer from communicating "on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party...." Dominick's seeks to preclude Plaintiffs and their counsel from engaging in communications with Dominick's present and former managers,[2] unless express consent of Dominick's, or authorization from this Court, is obtained. (Def.'s Reply Supp. at 9.) Dominick's argues that, since all of these managers are represented by Dominick's counsel, Plaintiffs' counsel is barred from any, and all, *ex parte* communications with them. (Id.)

---

1. The letter included the following statements:

 The plaintiffs in this lawsuit allege that Dominick's has treated women worse than men with respect to promotions and job assignments: Dominick's steers women into jobs from which they generally are not promoted and in which women typically get fewer hours of work than men. It is important to the success of this lawsuit that we talk to women who feel that they have been subject to discrimination. If you feel that: (a) you have been passed over for promotion because of your sex; (b) you have been given reduced hours, or required to

 work part-time, while comparable men have been given full-time work; (c) men who are less experienced or less qualified have been promoted while you have not; (d) you have been told that certain jobs are not appropriate for women or for you, because of your sex; then please contact us.

 (Pls.' Mem.Opp'n at Ex. A.)

2. This request also includes present and former co-managers, present assistant managers, present department managers, and present supervisors. (Def.'s Reply Supp. at 4.)

Dominick's also contends that Plaintiffs' counsel violated the "spirit of the Court's discovery order" which compelled it to turn over the data base information to Plaintiffs. (Id. at 4.) It bases this argument on a misconstrued belief that this Court relied solely on Plaintiffs' argument that the data base information was necessary "'to show the character of Defendant's work force, the number of potential class members and how Defendant's policies and procedures impact upon other segments of its work force.'" (Id. at 8.) Dominick's further requests that this Court order Plaintiffs to turn over to Dominick's all originals and copies of every communication made with present and former managers.[3] (Id. at 9.)

As a result of the mass mailing of letters, Plaintiffs discovered additional, pivotal information, and now bring their Motion to File Second Amended Complaint, in order to add three women, Georgine Arvanites, Janet M. Tripp, and Maureen Gleixner, as named plaintiffs. (Plaintiffs' Memorandum in Support of Motion to File Second Amended Complaint [Pls.' Mem. Supp.] at 1.) Dominick's opposes this motion on the grounds that the three proposed additional plaintiffs: (1) can not adequately represent the class in this matter; (2) failed to exhaust their administrative remedies; and (3) were discovered as the result of the improper conduct of Plaintiffs' counsel. (Defendant's Response in Opposition to Plaintiffs' Motion to File Second Amended Complaint. [Def.'s Resp. Opp'n] at 4–6.)

## DISCUSSION

### I. DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Dominick's argues that Plaintiffs' counsel should be barred from communicating with current and former managers, co-managers, assistant managers, department managers, and supervisors, without the presence of its counsel, because all are represented by Dom-

---

**3.** The Court hereby grants that portion of Defendant's motion, to the extent that it concerns current managers and current co-managers. Thus, Plaintiffs are ordered to turn over to Dominick's all *ex parte* communications made with

inick's and contact is, therefore, barred by Rule 4.2.

### A. *Scope and Purpose of Rule 4.2*

Rule 4.2 of the Rules of Professional Conduct for the Northern District of Illinois states:

> During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law.

*See also In Re Air Crash Disaster Near Roselawn, Ind.,* 909 F.Supp. 1116, 1121 (N.D.Ill.1995).

The purpose of Rule 4.2 is "to protect the attorney-client relationship with a corporate client." *Breedlove v. Tele–Trip Co., Inc.,* No. 91 C 5702, 1992 WL 202147, at *1 (N.D.Ill. Aug. 14, 1992). The Comment to Rule 4.2 addresses the issue of corporations as parties, and discusses which corporate employees may constitute represented parties:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Dominick's argues that all of its managerial positions (including current and former managers, current co-managers, current assistant managers, current department managers, and current supervisors) are covered under Rule 4.2. Thus, Dominick's argues that Plaintiffs' counsel is barred from communi-

---

current managers and current co-managers. Additionally, Plaintiffs may not use any of these communications as admissions against Dominick's.

cating with any of these individuals, without the consent of its counsel.

## B. *Former Employees of Dominick's*

■ This Court finds that former employees, including former managers, are not encompassed by Rule 4.2, and may freely engage in communications with Plaintiffs' counsel. Neither Rule 4.2, nor the Comment, makes any reference to former employees, or implies that former employees constitute parties "represented by another lawyer." *Brown v. St. Joseph County,* 148 F.R.D. 246, 252 (N.D.Ind.1993) (emphasis omitted). Although the Seventh Circuit has not specifically held that former employees are excluded from Rule 4.2, most courts addressing this issue have concluded that Rule 4.2 "does not encompass a defendant organization's former employees." *Ahern v. Board of Educ. of City of Chicago,* No. 92 C 4074, 1995 WL 680476, at *1 (N.D.Ill. Nov. 14, 1995); *see also Shamlin v. Commonwealth Edison Co.,* No. 93 C 2149, 1994 WL 148701, at *3 (N.D.Ill. Apr. 20, 1994) (finding that Rule 4.2 does not preclude lawyer from contacting corporation's former employees, despite lack of corporation's consent).

■ In *Ahern,* the court determined that expanding Rule 4.2 to include former employees would be problematic because it "would unduly hinder attorneys' ability to conduct informal discovery in cases with employer party-opponents." *Ahern,* 1995 WL 680476, at *1 (citing *Oak Indus. v. Zenith Indus.,* No. 86 C 4302, 1988 WL 79614, at *2 (N.D.Ill. July 27, 1988)). In *Oak Industries,* the court concluded that, affording former employees the protection of Rule 4.2 and "requiring the formal consent of an employer's counsel prior to contacting former employees will only increase the costs of litigation and possibly decrease the willingness of former employees to provide information." *Oak Indus.,* 1988 WL 79614, at *2. The possibility that former employees may reveal damaging information, which may give rise to a corporation's liability, is insufficient to implicate Rule 4.2. *Ahern,* 1995 WL 680476, at *1–2. Additionally, former employees are outside the scope of the Rule because, unlike current employees, they "cannot bind the corporation in the sense that an agent binds

a principal." *Brown,* 148 F.R.D. at 252 (citing *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258, 269–70 (D.N.J.1991)). Thus, this Court finds that communications between Plaintiffs' counsel and any former employees (including former managers) will not violate Rule 4.2. However, this Court reminds Plaintiffs that former and current managers, or any former or current employees for that matter, are barred from discussing with Plaintiffs any privileged information to which they were privy. *Breedlove,* 1992 WL 202147, at *2.

## C. *Current Employees of Dominick's*

Courts have debated at length which current corporate employees constitute represented parties under Rule 4.2, and have applied several different tests to determine exactly which employees are encompassed by the Rule. *See Brown,* 148 F.R.D. at 253–54 (listing possible tests used, such as the "'management-speaking-agent' test", "'balancing' test", "'control group' test", "'blanket' test", and "'scope of employment' test"). The Seventh Circuit has not adopted any one of these particular tests.

The Comment to Rule 4.2, sets forth three categories of corporate employees who are encompassed by Rule 4.2: (1) managerial employees; (2) employees whose acts in the matter can be imputed to the organization; and (3) employees whose admissions at trial would be binding on the organization. *Breedlove,* 1992 WL 202147, at *1.

### 1. Managerial Employees

■ During oral argument on June 28, 1996, Dominick's stated that the managers and co-managers make many of the fundamental employment decisions, such as hiring, scheduling work shifts, and recommending terminations. (R. at 5–6.) Clearly, these individuals fall within the first category of managerial employees, and, therefore, this Court finds that Plaintiffs' counsel cannot engage in informal communications with Dominick's current managers and co-managers. However, this Court does not find that the lower-level management positions (assistant managers, department managers, and supervisors) retain this same protection.

Dominick's also admitted, during that same oral argument, that the assistant managers, department managers, and supervisors, who all rank below co-managers, are within the collective bargaining unit. (R. at 4.) Yet, it argues that the grocery industry is unique, in that members of the collective bargaining unit also hold managerial positions. (Id.) This Court is not persuaded by the assertion that lower-level managers can be bound by union contracts, yet make fundamental employment decisions and implement corporate policy. It is inconceivable that Dominick's would not have successfully challenged the inclusion of such individuals in the collective bargaining unit. It is well established that collective bargaining units do not represent managerial employees. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 288, 94 S.Ct. 1757, 1768–69, 40 L.Ed.2d 134 (1974) (determining that all managerial employees, individuals who " 'formulate and effectuate management policies by expressing and making operative the decisions of their employer' ", are excluded from the National Labor Relations Act and are not members of collective bargaining units).

■ However, not all employees with supervisory or manager-type positions, or titles, fall into the category of "managerial" employees, or are encompassed in the Comment to Rule 4.2. In *Carter–Herman v. City of Philadelphia*, 897 F.Supp. 899, 901 (E.D.Pa.1995), where a female police officer brought a sexual harassment suit against the city and police department, the court permitted the plaintiff's counsel to conduct interviews with sergeants, without opposing counsel's presence. The court determined that the "position of Sergeant [was] analogous to that of a foreman, whose supervision of a small group of workers would not constitute a managerial position within a corporation." *Carter–Herman*, 897 F.Supp. at 904.

■ In the matter at bar, the assistant manager, department manager, and supervisor positions are analogous to that of foreman. Thus, the Court concludes that these individuals are not "managerial" employees for purposes of applying the Comment. Moreover, Brian Holman, one of Plaintiffs' attorneys, attested, in an affidavit that in a previous litigation matter, when Dominick's was asked to produce for deposition employees who were union members, Dominick's asserted that it did not represent or control any employees below the position of co-manager for deposition matters. (Plaintiffs' Surreply in Opposition to Defendant's Motion for Protective Order [Pls. Surreply Opp'n] at Ex. A.) Therefore, all employee witnesses who were members of a union were required to be subpoenaed for deposition. This clearly contradicts Dominick's current position that all lower-level managers are represented by Dominick's. (R. at 17–19.)

This Court finds that the assistant managers, department managers, and supervisors do not fall within the Comment's first category concerning "managerial" employees. Therefore, they are not prevented from communicating with Plaintiffs' counsel merely because of their job titles.

### 2. Employee Imputed Liability

This Court finds that the same lower-level managers, as discussed above, likewise do not fall within the second category of the Comment: "employees whose acts in the matter can be imputed to the organization...." *Breedlove*, 1992 WL 202147, at *1. This Court finds that, generally, the acts of the assistant managers, department managers, and supervisors will not impute liability to Dominick's. Thus, they are permitted to engage in informal communications with Plaintiffs' counsel, provided, Plaintiffs' attorneys do not communicate with individuals involved in creating, or expressly implementing any of the alleged discriminatory employment practices.

### 3. Employees Whose Statements Constitute Binding Admissions

■ The third category of Rule 4.2's Comment is the most troublesome because it is the most difficult to delineate. According to the language of the Comment, corporate employees "whose statement[s] may constitute an admission on the part of the organization" are precluded from engaging in communications with a plaintiff's counsel without consent of the defendant's attorney. In *B.H. by Monahan v. Johnson*, 128 F.R.D. 659

(N.D.Ill.1989) and *In Re Air Crash,* 909 F.Supp. 1116, Northern District of Illinois Judges Grady and Castillo, respectively, noted the strong connection between this language and Federal Rule of Evidence 801(d)(2)(D), which provides an exemption to the hearsay rule. Rule 801(d)(2)(D) declares that a statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *See B.H. by Monahan,* 128 F.R.D. at 662.[4] Both judges assumed that, under the Comment's third category, this hearsay exemption was invoked.

In *B.H. by Monahan,* the court noted that the plaintiffs would be able to discover information more easily if counsel could interview the employees without the presence of the defendant's counsel, but was "concerned about the ability of caseworkers to bind defendant with their out-of-court statements under Federal Rule of Evidence 801(d)(2)(D)." 128 F.R.D. at 662. Recognizing that under Rule 801(d)(2)(D), almost any employee could make a statement that would bind the corporation as an admission, the court rejected the three part test of Rule 4.2's Comment, finding it "too expansive", instead, preferring to "make a determination based on the facts of the case before [it]." *Id.* at 661. Importantly, however, Judge Grady held that the plaintiffs could not "have their cake and eat it too." *Id.* at 663. The plaintiffs could not consider employees "nonparties" for purposes of the ethical rules, but "parties" making binding admissions for purposes of the Federal Rules of Evidence.

Thus, the court in *B.H. by Monahan* held that the plaintiffs' counsel could conduct interviews with the employees, but could not offer "such informally gathered evidence as admissions of party-opponents." *Id.*[5] The decision in *In Re Air Crash* is the flip side of the same coin, where the court pronounced that the plaintiff could not communicate directly with employees because, under Rule 801(d)(2)(D), "virtually every employee may conceivably make admissions binding on his or her employer." 909 F.Supp. at 1121.

This Court finds that the best reconciliation of Rule 4.2 and Rule 801(d)(2)(D) results in a choice for Plaintiffs' counsel. Although this Court declines to hold that communications with assistant managers, department managers, and supervisors without the prior consent of Dominick's counsel violate Rule 4.2,[6] Plaintiffs can not "have their cake and eat it too." Plaintiffs may *either* communicate informally with assistant managers, department managers, and supervisors, *or* use statements from these individuals—but they may not do both. Thus, the Court holds that Plaintiffs may not obtain statements from current employees, through informal contacts, then use those statements as admissions against Dominick's. Conversely, the Court holds that, for any informal communication with the aforementioned types of employees to result in a binding admission, Dominick's counsel must have consented prior to the communication.

In sum, since Comment categories one and two do not apply to the assistant managers, department managers, and supervisors, if Plaintiffs' counsel wishes to engage in com-

---

**4.** The minor plaintiffs were under the protective custody of the Illinois Department of Children and Family Services, and brought suit against the agency claiming that they were not placed in safe and stable homes within a reasonable amount of time. *B.H. by Monahan,* 128 F.R.D. at 659. The court addressed whether the plaintiffs' counsel committed an ethical violation by conducting interviews with several caseworkers at the Department without the consent or presence of the defendant's counsel.

**5.** Additionally, focusing on the fact that Rule 801(d)(2)(D) was not meant to have such a broad application and include so many individuals, the court in *B.H. by Monahan* found that "statements

gathered by opposing counsel in this informal manner, if received into evidence as admissions, would be unfairly prejudicial to defendant under Federal Rule of Evidence 403." 128 F.R.D. at 663.

**6.** The Court notes that the third category of Rule 4.2's Comment impliedly swallows the other two categories; if every employee could potentially bind the corporation, there would be no need to distinguish managerial employees (first category), employees who could impute liability (second category), and those employees whose statements could constitute admissions on the part of the corporation (third category).

munications with these particular individuals, without the prior consent of Dominick's counsel, then they will be judicially estopped from later offering any statements informally gathered (during those communications) as party-opponent admissions against Dominick's.

### D. *Ethical Violations and Sanctions*

Dominick's argues that Plaintiffs' attorneys breached their ethical obligations by: (1) sending the form letter to managers; and (2) violating the spirit of the Discovery Order which compelled Dominick's to divulge the data base information to Plaintiffs. (Def.'s Reply Supp. at 4.)

▮ First, courts are disinclined to impose sanctions for slight infractions by attorneys. *See Halverson v. Convenient Food Mart, Inc.,* 458 F.2d 927, 931 (7th Cir.1972) (holding that, although plaintiff's attorney committed minor breach of ethics by sending letters to potential class members requesting them to join, misconduct did not warrant sanctions). Here, Plaintiffs contend, and this Court agrees, that any contact between their attorneys and current managers, by the mass mailing, was inadvertent. This Court recognizes that Plaintiffs' counsel, unlike the attorney in *Halverson,* did not solicit other female employees of Dominick's to join the suit. Instead, their attorneys sought information pertaining to the nature of Dominick's alleged discriminatory practices. This Court, therefore, finds that counsel's contact with some current managers was inadvertent, and neither constitutes an ethical violation, nor warrants sanctions.[7]

Second, Dominick's argument that Plaintiffs' counsel exceeded the boundaries of the Discovery Order is without merit. Contrary to the Defendant's belief, this Court, in compelling the production of the data base information, never limited, nor intended to limit, Plaintiffs' use of that information. It is inconceivable that this Court would, by limiting the use of discoverable material, completely impinge upon Plaintiffs' First Amendment rights. It is true that one purpose for granting the Discovery Order was to allow Plaintiffs "'to show the character of Defendant's work force, the number of potential class members and how Defendant's policies and procedures impact upon other segments of its work force.'" (Def.'s Reply Supp. at 8.) However, this Court recognized that this was not the sole reason for the requested information, and never expressed, nor implied, that Plaintiffs must restrict their use of the material. Dominick's has failed to convince the Court that Plaintiffs' counsel acted in deliberate violation of the code of ethics. Therefore, sanctions against Plaintiffs' attorneys would be inappropriate here.

### E. *Conclusion*

In sum, this Court finds that Plaintiffs' attorneys neither breached their ethical obligations, nor violated Rule 4.2. Having determined that any past contact with current managers and co-managers was inadvertent, this Court concludes that sanctions against Plaintiffs' counsel are inappropriate in this matter. Plaintiffs are forewarned, however, that any future contact with managers and co-managers, absent the consent of Dominick's counsel, would constitute a violation of Rule 4.2. In light of the language of the Comment to Rule 4.2, this Court concludes that former employees (including former managers) are not encompassed by the Rule, and Plaintiffs' counsel may engage in informal communications with such individuals. Also, informal interviews with the assistant managers, department managers, and supervisors are not barred by the Comment to Rule 4.2. Thus, conducting informal interviews with these individuals would not violate Rule 4.2. However, Plaintiffs' counsel may not offer any information gathered from such communications as admissions against Dominick's.

### II. MOTION TO FILE SECOND AMENDED COMPLAINT

Plaintiffs seek leave to file a second amended complaint, pursuant to Federal

---

7. Counsel is hereby forewarned that any further informal communications with current managers or co-managers will violate Rule 4.2.

Rule of Civil Procedure 15, in order to add Georgine Arvanites, Janet M. Tripp, and Maureen Gleixner, as named plaintiffs. Dominick's opposes this motion, arguing that the three potential named plaintiffs: (1) can not adequately represent the class in this suit; (2) failed to exhaust their administrative remedies; and (3) were discovered by the unethical conduct of Plaintiffs' attorneys.

### A. *Legal Standard for Granting of Motion to File Amended Complaint*

Federal Rule of Civil Procedure 15(a) states that leave to file an amended complaint "shall be freely given." A trial court has the discretion to grant a plaintiff leave to amend his or her pleadings. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 *reh'g denied,* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971); *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 773 (7th Cir.1995). The purpose of this liberal standard is to allow plaintiffs to present, and have the court decide, a case on its merits. *In Re Olympia Brewing Co. Sec. Litig.,* 674 F.Supp. 597, 605 (N.D.Ill.1987). Thus, the court will freely permit a party to amend its complaint,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment....

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Although almost every amendment results in *some* prejudice to a defendant, a court should prohibit an amended complaint "[o]nly where the prejudice outweighs the moving party's right to have the case decided on the merits...." *Alberto–Culver Co. v. Gillette Co.,* 408 F.Supp. 1160, 1162 (N.D.Ill. 1976) (noting that an amended complaint inevitably results in new discovery and some delay in proceedings). Because the policy behind Rule 15 (courts should decide controversies on the merits) must be balanced with the possibility that the defendant will be prejudiced, the ultimate test is whether an amendment will create *undue* prejudice on the part of the defendant. *Id.; Stone Container Corp. v. Arkwright Mut. Ins. Co.,* No. 93 C 6626, 1996 WL 238904, at *4 (N.D.Ill. May 2, 1996) (concluding that, although plaintiff's amendment might cause *some* delay in proceedings, it would not unduly prejudice defendant); *see also Tragarz v. Keene Corp.,* 980 F.2d 411, 432 (7th Cir.1992) (holding that "delay is an insufficient basis for denying a motion to amend unless this delay results in undue prejudice to the opposing party.").

### B. *Dominick's Three Arguments Fail to Meet the Standard of Undue Prejudice*

Dominick's does not allege or present any evidence that it will be unduly prejudiced by Plaintiffs' amended complaint. Even assuming, *arguendo,* that Dominick's had alleged that Plaintiffs' amended complaint will create undue prejudice, none of its three arguments establish undue prejudice or otherwise satisfy the standard necessary to deny a motion to file an amendment.

### 1. Whether the additional named plaintiffs adequately represent the class does not establish that Dominick's will be unduly prejudiced

Dominick's argues that the Court should deny Plaintiffs' motion to amend their complaint because the three additional potential named plaintiffs, Georgine Arvanites, Janet M. Tripp, and Maureen Gleixner, can not adequately represent the class members. It notes that the six currently named plaintiffs are employees of Dominick's deli department, and are members of the Meat Division of United Food and Commercial Workers, Local 1540 or Local 546.[8] (Defendant's Response in Opposition to Plaintiffs' Motion to File Second Amended Complaint [Def.'s Resp. Opp'n] at 2.)

---

8. These two unions represent employees in the meat, deli, and seafood departments. Local 1540 represents employees in the suburban stores, and Local 546 represents those in the Chicago stores.

Dominick's contends that some of the employment practices Plaintiffs challenge as discriminatory, such as scheduling shift assignments, are governed by the union contracts, not Dominick's. (Id. at 3.) Dominick's also argues that, because the three putative plaintiffs do not work in the deli departments, but rather are members of the "retail clerks" unions and are covered by collective bargaining agreements completely different from the six already named plaintiffs, they do not represent the same interests as the currently named plaintiffs. (Id. at 2.) It further contends that, because the three additional women do not work in deli departments, they would "be called upon to represent a distinct and separate class of employees" and, therefore, should be prohibited from joining the suit as named plaintiffs.[9] (Id. at 4.)

As Plaintiffs correctly note, this is not a motion to certify a class, it is a motion to amend a complaint. (Plaintiffs' Reply Memorandum In Support of Its Motion to File Second Amended Complaint [Pls.' Reply Supp.] at 4.) While Dominick's is free to raise the issue of inadequate class representation in its opposition to Plaintiffs' motion for class certification, it is an irrelevant argument with respect to the issue of undue prejudice. (Id.)

 Courts have recognized that amending a complaint does not necessarily create undue prejudice on the part of the defendant. "A complaint merely serves to put the defendant on notice and is to be freely amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant." *Hicks v. Resolu-*

tion Trust Corp., 738 F.Supp. 279, 284 (N.D.Ill.1990) (finding that defendants could not have been surprised or prejudiced by plaintiff's amended complaint, because allegations arose out of same transaction, occurrence, or conduct as original complaint). Courts often permit amendments in order to add new plaintiffs, for this does not automatically create undue prejudice. *See Anderson v. Montgomery Ward & Co., Inc.,* 631 F.Supp. 1546, 1551 (N.D.Ill.1986), *aff'd,* 852 F.2d 1008 (7th Cir.1988) (granting plaintiff's motion to amend complaint to include additional plaintiffs based upon finding that "defendants have been aware of their claims and have actively defended against them...").[10]

In this case, the allegations of the three additional women encompass the same issues as the claims of the named plaintiffs, and do not advance any new legal theories. The claims of Ms. Arvanites, Ms. Tripp, and Ms. Gleixner are identical to those of Ms. Orlowski and the five other named plaintiffs.[11] Dominick's does not deny that courts liberally permit plaintiffs to amend complaints in order to add plaintiffs. Moreover, it fails to present any evidence that it would be *unduly* prejudiced by the addition of the three women. Furthermore, Dominick's can not even argue that it is surprised by the amendment, because it is presently defending itself against claims of sex discrimination.

Dominick's does not assert that the complaints of Ms. Arvanites, Ms. Tripp, and Ms. Gleixner are different from those of the six currently named plaintiffs. Because this Court finds that Plaintiffs have established that the second amended complaint will not unduly prejudice Dominick's, the arguments

---

9. This Court notes that Dominick's did not contest Plaintiffs' motion to file a first amended complaint, which sought to add four named plaintiffs, because those women were all employees of the deli department. Dominick's apparently now opposes the amendment because including these three women (who are members of the "retail clerks" union) as named plaintiffs would weaken its contention that the appropriate class in this matter includes only those female employees in the deli departments.

10. *See Sogevalor, S.A. v. Penn. Central Corp.,* 137 F.R.D. 12, 14 (S.D.Ohio 1991), where the court granted the plaintiff's motion to amend the complaint and add a new plaintiff for the following

reasons: (1) the putative plaintiff made essentially the same claims as the already named plaintiff; (2) if the court denied the motion, the would-be plaintiff would simply file his own lawsuit and the defendant would be forced to respond at a later date to claims already pending in court; (3) the action could then proceed without further delay; and (4) Rule 15 dictated that courts should use a liberal standard in allowing amended complaints.

11. All of the claims state that Dominick's discriminated against each woman "on the basis of sex." (Pls.' Mem.Supp. at Exs. A–F.)

raised by Dominick's fail to meet the standard necessary to preclude an amended complaint pursuant to Rule 15.

**2. Whether the putative plaintiffs have exhausted their administrative remedies is not a sufficient argument to establish undue prejudice**

Dominick's argues that Plaintiffs should be prohibited from adding Ms. Arvanites, Ms. Tripp, and Ms. Gleixner as named plaintiffs because all three women failed to file individual EEOC charges against Dominick's prior to joining this lawsuit. However, the Seventh Circuit has held that "Title VII does not require that as a prerequisite to suit an individual alleging discrimination must first file a complaint with the EEOC." *Eichman v. Indiana State Univ. Bd. of Trustees*, 597 F.2d 1104, 1108 (7th Cir.1979) (noting that Title VII addresses charges filed " 'by *or on behalf* of a person claiming to be aggrieved....' ").

▇▇▇ Case law indicates that Ms. Arvanites, Ms. Tripp, and Ms. Gleixner may be added as named plaintiffs, even though they did not individually file EEOC charges against Dominick's. The six currently named plaintiffs brought this Title VII action on behalf of all female employees of Dominick's, and made this class allegation in each of their EEOC charges. (Pls.' Mem.Supp. at Exs. A–F.) In *Allen v. City of Chicago*, 828 F.Supp. 543, 556 (N.D.Ill.1993), the court, in addressing the issue in a class action suit, noted the well-settled principle that plaintiffs who do not file timely charges of discrimination with the EEOC may rely on those plaintiffs who did file charges if "the claims of the non-filing plaintiffs arise out of a sufficiently similar discriminatory treatment as those claims brought before the EEOC...." The purpose of this requirement is to give the employer notice of the action brought against it. In *Allen*, however, the court denied the plaintiffs' motion to add fifty-two new plaintiffs because there was no evidence establishing that the claims of the new individuals

were "sufficiently similar" to those of the original plaintiffs. *Id.* at 547, 556; *see also Binion v. Metropolitan Pier & Exposition Auth.*, 163 F.R.D. 517, 529 (N.D.Ill.1995) (determining that notice requirement is satisfied when classwide allegations are made within EEOC charge because complaint notifies defendant of substantive claims brought against it as well as number and general identities of potential plaintiffs); *Banas v. American Airlines*, 969 F.2d 477, 483 (7th Cir.1992) (holding that "a validly filed EEOC charge can be relied upon by a plaintiff who did not actually file the charge but upon whose behalf the charge was filed.") (emphasis omitted).

Dominick's does not argue that courts require plaintiffs to file their own EEOC charges in order to be party to a Title VII lawsuit. Instead, it contends that, in this case, the three women should not be allowed to "piggy-back" on the EEOC filings of the other named plaintiffs because they can not adequately represent the class, since they do not work in the deli departments. (Def.'s Resp.Opp'n at 5.) Dominick's unpersuasively cites *Banas* to support its position that a potential plaintiff can not rely on the filed EEOC charge of an already named plaintiff, where the two individuals could not represent the same class in the suit. (Id. at 5–6.) Dominick's application of *Banas* to this case is flawed. The court in *Banas* upheld the district court's determination that, because the plaintiff did not file a *timely* EEOC charge, the other potential plaintiffs could not rely on that *untimely* filed charge for their own claims. *Banas*, 969 F.2d at 483.

Dominick's again bases its argument on the belief that the three potential named plaintiffs do not adequately represent the class members. It argues that Plaintiffs, by adding these new individuals, seek to "create a second class, with its own class representatives." [12] (Def.'s Resp.Opp'n at 5.) Once again, this Court reminds Dominick's that the matter at bar does not concern a motion

---

**12.** Dominick's asserts that the class in this matter is comprised of only those female employees in the deli departments (who belong to the "meat cutters" union), and has argued that female members of the "retail clerks" union are not part of this suit. Although the Court will not address

the propriety of class certification in this Opinion, it is clear that Plaintiffs' original complaint was filed on behalf of all female employees of Dominick's. Thus, it appears that it is Dominick's, not Plaintiffs, who strives to redefine and limit the class at this time.

for class certification. The issue of class representation is irrelevant with respect to the instant motion. The original Plaintiffs filed timely EEOC charges, which gave Dominick's ample notice of the nature of the suit and provided the general identities of those who could potentially join the suit. Further, the complaints of the three potential plaintiffs are more than "sufficiently similar" to those of the named plaintiffs—they are identical. Thus, this Court concludes that Plaintiffs may amend their complaint to include Ms. Arvanites, Ms. Tripp, and Ms. Gleixner as named plaintiffs.

**3. Whether Plaintiffs learned of the identities of the putative plaintiffs through counsel's misconduct does not satisfy the requirement of proving undue prejudice on Dominick's part**

In a footnote at the end of its brief, Dominick's argues that Plaintiffs discovered the three women whom it seeks to add as named plaintiffs as a result of the form letter sent to the female employees. (Def.'s Resp.Opp'n at 6.) Dominick's reiterates its contention that, by sending the mass mailing, Plaintiffs' counsel acted unethically. As set forth in Part I of this discussion, this Court finds no ethical violation by Plaintiffs' attorneys. Thus, Dominick's argument on this point is moot. Additionally, this Court notes that Dominick's makes this assertion solely in a footnote, indicating that it recognizes the weakness of its own argument. Finally, this Court finds that Dominick's argument fails to establish the necessary element of undue prejudice.

### CONCLUSION

This Court concludes that Rule 4.2 of the Rules of Professional Conduct for the Northern District of Illinois does not encompass any former employees of Dominick's. It also finds that communications between Plaintiffs' counsel and current assistant managers, current department managers, and current supervisors, without the prior consent of Defendant's counsel, does not violate Rule 4.2. Plaintiffs' counsel may contact these individuals, but may not then offer any statements obtained as admissions by party-opponents against Dominick's. **IT IS THEREFORE ORDERED** that Defendant's Motion for

Protective Order be, and the same hereby is, **GRANTED, IN PART,** and **DENIED, IN PART,** consistent with this Opinion.

This Court finds further that, in light of the liberal policy favoring grants of leave to amend complaints, Defendant fails to demonstrate that it will be unduly prejudiced by Plaintiffs' addition of the newly named plaintiffs to this suit. Defendant's opposing arguments do not satisfy the standard necessary to deny a motion to file an amended complaint. **IT IS THEREFORE ALSO ORDERED** that Plaintiffs' Motion to File Second Amended Complaint be, and the same hereby is, **GRANTED.**