BERNHARDT BROS. TUGBOAT SERVICE, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 14235.

United States Court of Appeals Seventh Circuit.

Feb. 27, 1964.

V. Lee McMahon, St. Louis, Mo., McMahon & Zempel, St. Louis, Mo., of counsel, for petitioner.

Harold Gruenberg, Gruenberg, Schobel & Souders, St. Louis, Mo., for Inland Boatmen's Union of Seafarers' International Union, Atlantic, Gulf, Lakes and Inland Waters District, AFL–CIO, as amicus curiae.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Leo N. McGuire, Atty., N. L. R. B., for respondent.

Abraham E. Freedman, Philadelphia, Pa., S. Gerald Litvin, Stanley B. Gruber, Freedman, Landy & Lorry, Gen. Counsel, Philadelphia, Pa., amicus curiae.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

The petitioner, Bernhardt Bros. Tugboat Service, Inc., (hereinafter called

"Bernhardt") seeks to set aside the order issued by the National Labor Relations Board on May 28, 1963 (reported at 142 NLRB No. 96) requiring Bernhardt to cease and desist from certain unfair labor practices found by the Board, and from infringing upon the rights of employees guaranteed in the National Labor Relations Act (29 U.S.C. § 151 et seq.); and to withdraw and withhold recognition from Inland Boatmen's Union of Seafarers' International Union, Atlantic, Gulf, Lakes and Inland Waters District, AFL-CIO (hereinafter called the "SIU"), as the exclusive representative of Bernhardt's nonsupervisory employees,—and to cease giving effect to the agreement entered into with the SIU on February 19, 1962, unless and until the SIU wins a Board-conducted election.

It is this last to which Bernhardt particularly objects. Further provision was made in the Order to reimburse employees for loss of earnings, membership dues, fees and assessments; and to post appropriate notices. The Board has filed a cross application for enforcement of its Order.

Bernhardt operates four towboats on the Mississippi River and its tributaries.

The Board found that James A. Chappell was hired as a deckhand on the towboat WISCONSIN on January 28, 1962, and a few days later had a conversation with the Pilot, Richard Bateman, about membership in the National Maritime Union of America, AFL-CIO (hereinafter called the "NMU").

With respect to Mr. Chappell, the Board found that Pilot Bateman told him that he would be put off the boat if Pilot Bateman found him trying to organize Bernhardt's crews for the NMU, of which Mr. Chappell was known to be a member.

Pilot Bateman told Captain Crowder, the Master of the WISCONSIN, that Mr. Chappell intended to encourage the crew to sign NMU cards, and Captain Crowder passed this information on to Ray A. Eckstein, Secretary of Bernhardt.

On February 3, 1962, after Captain Schickling boarded the WISCONSIN, as Master in Captain Crowder's absence, Pilot Bateman told him that James Chappell was being put off the towboat for "union activities," even though this left the WISCONSIN short handed. This information was transmitted to several members of the crew. Bernhardt attributes the discharge of Mr. Chappell to general anti-union bias and not to bias against NMU.

On February 9, 1962, Mr. Chappell filed charges with the Board. On February 13, Bernhardt offered him reinstatement. On February 18, he returned to work aboard another towboat, the WILLIAM CLARK.

Bernhardt contends that the incident involving Mr. Chappell can have had no effect on the subsequent action of the SIU to organize Bernhardt's employees. A question is also raised as to the supervisory status of Pilot Bateman.

■ There was evidence that, while there was some variation among the towboats, all the pilots had authority responsibly to direct the crew on their watch, and that their exercise of authority was not mere routine, but required exercise of independent skill and judgment. We agree with the Board that Bernhardt's pilots qualify under the Act as supervisors.

Meanwhile, on February 12, when Captain Crowder returned to the WISCONSIN to take over again as Master, Bernhardt's attorney, V. Lee McMahon, told him that Bernhardt had decided after all to deal with a union, that it preferred to deal with the SIU, and that he should allow SIU organizers to come aboard to talk to the crew. In addition, the attorney directed Captain Crowder to read, and post, a notice to the crew which stated that the SIU was attempting to organize the employees, that the employees were free to join if they wished, and that Bernhardt would bargain with SIU, or any other union chosen. (Bernhardt states that at that point, no other union was attempting to

organize Bernhardt's crews.) The notice also stated that employees need not worry about getting fired for joining a union, and that Bernhardt had "never operated on the other side of the law."

Bernhardt states that it changed its basic policy toward unions on the advice of Bernhardt's attorney, Mr. McMahon. Determination of the motivation of Bernhardt presented an issue of credibility for the Board.

The same day, February 12, SIU organizers came aboard and signed up Pilot Bateman and all eight non-supervisory employees on the WISCONSIN. When Captain Crowder told Secretary Eckstein about this on the telephone, the latter instructed the Captain to allow no further visitors aboard without a letter of authorization from Bernhardt's main office at Cassville. Although Secretary Eckstein at first told the Captain that this action was dictated by Bernhardt's insurers, Captain Crowder testified that he asked, "You mean you don't want the crew to do any business with any other union?" and Secretary Eckstein answered, "That's what I mean, that's right." This policy was followed, as a little more than a week later, in the presence of several employees, Captain Crowder refused to permit an NMU organizer to remain on the WISCONSIN without a letter of authorization.

On February 13, 14 and 15, SIU organizers signed up employees on the other towboats. On the PERE MARQUETTE, on February 15, Engineer Kenneth Swan declined to sign at first, but did so later when, in the presence of other employees, the Master of the PERE MARQUETTE told him that the SIU was the only union Bernhardt would recognize. Bernhardt contends that its supervisor's expression of Bernhardt's preference for one union doesn't constitute unlawful assistance under the Act but is merely a protected form of free speech.

Bernhardt recognized SIU as the exclusive bargaining agent of its rank and file employees on February 15, and on February 19, entered into the contract mentioned above. It contained a 31-day union security clause.

When James Chappell returned to work on the WILLIAM CLARK on February 18, he signed up several members for NMU, but on February 26, Captain Schickling told him to sign a pledge card for SIU or leave the boat at Cairo. He left rather than sign.

There was evidence that Masters and Pilots had told other employees that they must sign SIU documents or leave.

Bernhardt contends that the discharge of Chappell, having occurred before the SIU attempt to organize, could not constitute unlawful assistance to SIU, especially as Chappell was rehired. The dates, however, are significant. Chappell, a known NMU adherent was discharged on February 3, 1962 for union activity. On February 15, Bernhardt's preference for the SIU was expressed in the hearing of several employees. SIU organizers were allowed on board and as soon as they had signed up employees, restrictions were imposed on others having access to those employees, thus isolating them from influences adverse to the SIU. The general provisions of the February 12 notice, coming so shortly after the discharge of Chappell, could not have dissipated the coercive effects of his discharge. Even if the employees did hear of his reinstatement there was no offer of back pay or posting of notices respecting Chappell to reassure them that reprisals were not to be feared.

Under all of the particular circumstances of this specific case, we find ample support for the Board's conclusion that the SIU was not the freely designated bargaining representative of Bernhardt's crews and that Bernhardt violated § 8(a) (1), (2) and (3) of the Act by extending recognition to, by aiding, and by executing and maintaining a union security contract with the SIU. We also find that the Board's findings concerning violation of § 8(a) (3) and (1), with respect to James Chappell, are fully supported by the record.

Bernhardt characterizes the Order to withdraw recognition, etc., as arbitrary, capricious and punitive, and not an appropriate remedy here.

In our opinion, the Board did act within its discretion in concluding that continued recognition of the SIU would be a continuing obstacle to the employees' free choice. NLRB v. LaSalle Steel Co., 7 Cir., 1949, 178 F.2d 829, 835, cert. den. 339 U.S. 963, 70 S.Ct. 996, 94 L.Ed. 1372; Indiana Metal Products Corp. v. NLRB, 7 Cir., 1953, 202 F.2d 613.

The Court has considered carefully all other arguments advanced by Bernhardt, but finds them lacking in merit. Close study has been given to the cases of Local 1325, Retail Clerks International Ass'n, AFL-CIO v. NLRB and NLRB v. Topps Kerrmill, Inc., 1st Cir., 1963, 325 F.2d 293, to which Bernhardt invited our attention on oral argument in this Court. We find that those cases differ from the one before us and are distinguished by their facts. The Board's order will be enforced.

Enforcement ordered.