416 F.2d 28
 71 L.R.R.M. (BNA) 3225
 Lindsey J. WILLIAMS, Fred Farnen, Al Kerr, Robert Jones,
Frank Aubusson, Joseph Cecire, James Hayes, Henry Rake,
Irving Saunders and C. J. Bracco, Trustees, Seafarers'
Welfare Plan, Plaintiffs-Appellants,
v.
WISCONSIN BARGE LINE, INC., a corporation, Cassville,
Wisconsin, Defendant-Appellee.
 No. 17226.
 United States Court of Appeals Seventh Circuit.
 Aug. 14, 1969.
 
 Harold Gruenberg, Gruenberg & Souders, St. Louis, mo., for appellants.
 James K. Almeter, Alton, Ill., V. Lee McMahon, St. Louis, Mo., for appellee.
 Before CASTLE, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.
 FAIRCHILD, Circuit Judge.
 
 
 1
 Plaintiffs are trustees of the Seafarers' Welfare Plan. The plan or trust was established to provide health, welfare and pension benefits to employers of maritime employees who have collective bargaining agreements with SIU (Seafarers' International Union of North America, Atlantic, Gulf, Lakes and Inland Waters District AFL-CIO). Half the trustees are appointed by the employers and half by SIU. Defendant is a Wisconsin corporation, formerly, at least, providing tug and towboat service on the Mississippi River and its tributaries. Its former corporate name was Bernhardt Brothers Tugboat Service, Inc. It is now Wisconsin Barge Line, Inc.
 
 
 2
 On February 19, 1962, defendant and SIU made a collective bargaining agreement which provided, among other things, that defendant would contribute to the trust $1.75 per day for each employee covered by the agreement. Defendant also signed the declaration of trust under which the plan operates. The declaration provides for the collection by the trustees of the amounts each employer agreed in its collective bargaining agreement to pay, for the eligibility of persons to receive benefits on the basis of employment by an employer obligated to make contributions, and for use of the fund to pay death, hospital and other benefits to eligible employees as well as expenses of administration of the trust. It is clear that all payments are to be paid from the common trust fund, notwithstanding the source of particular contributions, and that employers have no claim to all or any part of the fund.
 
 
 3
 On May 28, 1963 the National Labor Relations Board, after hearings before a trial examiner, adopted his findings and conclusions, and issued an order. It was found that defendant had engaged in unfair labor practices by rendering aid to the SIU in seeking support among defendant's employees and by signing and maintaining the contract in force when the SIU did not represent an uncoerced majority of the employees. The board ordered defendant, among other things, to cease and desist from 'giving force or effect to its agreement of February 19, 1962' with SIU until SIU shall have demonstrated its representative status pursuant to a board election 'provided that nothing contained herein shall force or require the (defendant) to change, alter or vary the substantive provisions of the said contract.'
 
 
 4
 Defendant petitioned for review and the board petitioned for enforcement. On February 27, 1964, this court decided that the board was entitled to enforcement.[1] Our decree was issued March 23, 1964.
 
 
 5
 After the board order, defendant decided to continue to make contributions to the plan in accordance with the collective bargaining agreement, at least pending judicial review of the board order. From time to time it supplied payroll data to plaintiffs, and made payments, though tardy. It gave no notice that it would cease its participation. It now asserts, however, that as of January 1, 1964 it started to charter its boats to others and ceased to have operating employees. It did supply payroll data for all periods to the close of 1963 and paid the contributions at the contract rate for all periods to the close of September, 1963. As late as February 10, 1964 it told plaintiffs that lack of operations because of bad weather was the reason for its delinquency in payment.
 
 
 6
 Plaintiffs paid benefits from time to time, based on the claimants' employment by defendant.
 
 
 7
 On September 25, 1964, plaintiffs brought this action for unpaid contributions, basing jurisdiction on sec. 301(a) LMRA, 29 U.S.C. 185(a). The liability asserted was clearly based upon violation of the collective bargaining agreement with SIU. Defendant moved for summary judgment on the ground the agreement of February 19, 1962 was void, and the district court ordered dismissal of the complaint.
 
 
 8
 Defendant's counterclaim was not disposed of, and because there was no final judgment, plaintiffs' appeal was dismissed.[2]
 
 
 9
 Defendant's amended counterclaim averred that its contributions paid into the trust exceeded benefits paid out of the trust to its employees, and sought recovery of the difference.
 
 
 10
 After trial to the court, the court reaffirmed its grant of summary judgment to defendant on the complaint, and allowed defendant to recover $12,276.78 on its counterclaim. Plaintiffs appealed.
 
 
 11
 The district court's theory was that the collective bargaining agreement was void ab initio and that plaintiffs could not recover for a liability created by it. We concur up to that point.[3]
 
 
 12
 The court apparently reasoned further that because defendant had no enforceable obligation to pay into the trust, any contributions it did make, either under a mistake as to its obligation or voluntarily, were recoverable by it, except that, apparently as a matter of equity, the trust should receive credit for benefits paid to claimants who were found eligible because of employment by defendant.
 
 
 13
 We disagree on the point concerning contributions actually paid in. They became part of the trust fund, devoted to the purposes of the declaration of trust. If the trust were an independent insurance company and the collective bargaining agreement had required the employer to maintain insurance for his employees, the fact that the collective bargaining agreement turned out to be unenforceable would not give the employer the right to recover premiums already paid. The insurance was a benefit provided the employees, and the premiums paid represented the cost. The analogy may not be perfect, because of the relationship between SIU and the trust, but we have not been persuaded that such relationship requires a different result. The trust is an entity separate from the SIU; the declaration of trust created rights in employees of defendant as well as those of other employers to receive benefits out of the trust fund; and the employees of any one employer might receive an aggregate of benefits less or more than their particular employer contributed. Under the declaration of trust, a claimant might be eligible for benefits with respect to employment by a particular contributing employer for as much as one year (extended under certain circumstances) after termination of his employment. We think that defendant's contributions conferred benefits and rights on its employees, and that even though the employees or the trustees could not compel defendant to continue making such contributions, the invalidity of the collective bargaining agreement did not give the defendant the right to take away what it had already conferred, nor permit invasion of the trust fund.
 
 
 14
 It seems, moreover, that our view is consistent with the order of N.L.R.B. While the order prohibited defendant from recognizing any obligation under the collective bargaining agreement, it provided that defendant was not required to change substantive provisions. The district court concluded that the proviso referred only to the content of some collective bargaining agreement properly made in the future with SIU or some other union, and permitted the substantive provisions to be identical with those of the former agreement. Construction of the proviso does present problems, but it is our conclusion that the board was attempting, somewhat ineptly, to make clear that although the substantive provisions as to terms of employment and employee benefits were not binding on defendant, defendant was free to continue offering the same terms and benefits.
 
 
 15
 It happens that the declaration of trust did not expressly provide what was to happen in the circumstances which occurred here, namely that an employer made contributions pursuant to a collective bargaining agreement which was determined by the board to be invalid, and continued to make contributions pending review of the board determination. Defendant made payments and promised further payments without any reservation. Plaintiffs apparently concluded that they would recognize benefit claims based on employment by defendant as long as defendant paid or promised to pay contributions. Defendant failed to prove that plaintiffs ever failed to pay a claim based on employment by defendant during the period for which it made or promised to make contributions. We see no equity in the counterclaim.
 
 
 16
 Plaintiffs' controller testified, although he did not have with him at the trial all the supporting records, that from February 19, 1962 to December 31, 1963 the total benefits paid on the basis of employment by defendant amounted to $19,912.73, the amount found by the court. He testified that in addition the total paid from January to March 22, 1964 was $14,217.57. The sum of these figures is more than defendant's contributions, and in addition he testified that the total cost of processing payrolls and claims allocable to defendant was $4,663.87.
 
 
 17
 The record does not disclose whether or not there was diversity of citizenship between plaintiffs and defendant, and the complaint predicated jurisdiction on the character of the action as a suit for violation of the collective bargaining agreement, plaintiffs being third party beneficiaries. The district court considered this the basis of jurisdiction, though he decided against plaintiffs on the existence of the collective bargaining agreement.[4] Apparently he concluded the court, having decided the merits of the complaint, had pendent jurisdiction over the counterclaim. We agree.
 
 
 18
 Perhaps the court would also have had pendent jurisdiction over a claim by plaintiffs in the alternative based on a new contract between defendant and plaintiffs and seeking recovery of the contributions due after September 30, 1963 and until March 23, 1964. Letters from defendant in evidence said pretty clearly that defendant intended to pay. But the complaint did not plead such claim, nor was there any motion to amend, and defendant objected to some of the evidence.
 
 
 19
 In so far as the judgment appealed from dismissed plaintiffs' complaint, it is affirmed. In so far as it granted defendant recovery on its counterclaim and costs of suit, it is reversed and the cause remanded with instructions to dismiss the counterclaim, without costs to either party. Plaintiffs are allowed costs on appeal.
 
 
 
 [1]
 Bernhardt Bros. Tugboat Service, Inc. v. N.L.R.B. (7th Cir., 1964), 328 F.2d 757
 
 
 [2]
 Williams v. Bernhardt Bros. Tugboat Service, Inc. (7th Cir., 1966), 357 F.2d 883
 
 
 [3]
 International Ladies' Garment Workers' Union, AFL-CIO v. N.L.R.B. (1961), 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762
 
 
 [4]
 See Baker v. Fleet Maintenance, Incorporated (7th Cir., 1969), 409 F.2d 551, 553