In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1563

Shane Weibrecht,

Plaintiff-Appellant,

v.

Southern Illinois Transfer, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98-CV-235-GPM--G. Patrick Murphy, Chief Judge.

Argued October 23, 2000--Decided February 27, 2001

Before Posner, Diane P. Wood, and Williams, Circuit
Judges.

Diane P. Wood, Circuit Judge.  Contacts between
lawyers and "represented parties" raise some of
the thornier issues in the area of legal ethics.
This case turns on one variant of the problem:
whether a provision of the Federal Employers'
Liability Act (FELA), 45 U.S.C. sec.sec. 51-60,
overrides an ethical rule adopted by the federal
district court that prohibits attorneys from
contacting parties represented by other counsel
under the circumstances presented here. The
district court concluded that the lawyer in
question had violated the ethical rule, that the
FELA provided no excuse, and that the situation
was so egregious as to call for outright
dismissal of the client's case. We agree with
everything but the last point, and thus we remand
for further proceedings on the remedy.

I

  Kenneth Weibrecht was a deckhand for Southern
Illinois Transfer. On the morning of February 16,
1998, Kenneth and another Southern Illinois
Transfer employee, Mike Bader, were in the
process of attaching a barge to a tug. Bader was
the pilot of the tug and was in charge of the
operation; Kenneth's job was to disconnect the
barge from another vessel so that it could be
attached to the tug. During the operation,

Kenneth somehow slipped into the water and drowned. No other Southern Illinois Transfer employees were present during the operation. After his father's death, Shane Weibrecht brought this suit under the Jones Act, 46 U.S.C. App. sec. 688, which incorporates the FELA for the purposes relevant to this case. In it he alleged that Southern Illinois Transfer was negligent in not having more deckhands involved in the operation, in not requiring Kenneth to wear a life preserver, and in not maintaining the safety and seaworthiness of the barge Kenneth was working on.

From the start, the case was plagued by more than its share of missteps. Initially, the plaintiff in the suit was Marilyn Weibrecht, Kenneth's wife, who had opened a probate estate proceeding in Illinois with herself as representative. Problems arose when it turned out that Shane had already done the same thing in Missouri (naming himself as representative) before Marilyn had acted. The district court concluded not only that Marilyn was not authorized to sue as a representative of her husband, but also that certain statements in Marilyn's Illinois probate application were "misstatement[s], approaching fraud." Despite its misgivings, and perhaps giving Shane and Marilyn's "innocent mistake" explanation the benefit of the doubt, the court dismissed the case without prejudice and permitted the Weibrechts to refile substituting Shane as the plaintiff. They did so, and the case proceeded to discovery, where additional problems arose. At one point, the defendants sought and were awarded a $300 sanction for the plaintiff's failure to respond to requests for information and interrogatories.

Against this backdrop, the parties scheduled Bader's deposition for December 16, 1999. On December 14, Shane personally contacted Bader and discussed with him the Weibrechts' theory that there should have been at least two deckhands on the barge at the time of the accident. Shane also told Bader that the lawsuit was his mother's doing and that the purpose of the lawsuit was not to recover money but to make Southern Illinois Transfer a safer place to work. Shane then suggested that Bader should contact the Weibrechts' attorney, Michael McGlynn. The district court found (over McGlynn's protestations to the contrary) that Shane made this call to Bader at McGlynn's suggestion. In any event, it is undisputed that on the next day, McGlynn called the Bader residence, asked to speak to Bader, and left a message asking Bader to call him. McGlynn insists the only purpose of his call was to make sure Bader was aware that

the time of the deposition had been changed.

On December 22, Southern Illinois Transfer filed a motion for sanctions based on the two calls to Bader, claiming that they violated Rule 4.2 of the district court's rules of professional conduct (based on the Illinois rule of the same number), which governs contacts between attorneys and parties represented by another lawyer and in general prohibits such contacts without the consent of the other lawyer. Inexplicably, McGlynn did not see the motion until the court mentioned it at a pretrial conference on January 24. McGlynn admitted that he was "caught off guard" at the pretrial conference and was unable to provide the district court with any case citations to back up his arguments that his conduct was permissible. Nevertheless, McGlynn argued that in Jones Act cases, the FELA specifically permits a plaintiff's lawyer to contact the defendant's employees and that this provision overrides any ethical prohibition on such contact. In the alternative, McGlynn argued that, as he understood the relevant ethical rules, Bader was not a sufficiently high-level manager at Southern Illinois Transfer to be considered represented by Southern Illinois Transfer's lawyer. McGlynn requested additional time to flesh out these arguments, but the district court, noting that McGlynn's office apparently had received the motion over a month before the hearing, declined his request for additional time, found that he had violated the rule, and dismissed the case with prejudice. McGlynn subsequently filed Rule 59(e) and Rule 60 motions in which he fleshed out his argument for why his conduct did not amount to an ethical breach, but the district court declined to amend the judgment or reopen the case.

II
A.  Interaction Between Ethical Rules and the FELA

The Southern District of Illinois has adopted Illinois's ethical rules as its own rules of professional conduct, see Southern District of Illinois Local Rule 83.4(d)(2), relying on both its power to enact local rules under Fed. R. Civ. P. 83 and its "inherent power and responsibility to supervise the conduct of attorneys admitted to practice before it." Local Rule 83.4, para. 1. The text of the rule McGlynn allegedly violated was therefore identical to its Illinois counterpart, Illinois Rule of Professional Conduct 4.2, which provides:

During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation

with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law.

(We refer to this as S.D. Ill. Rule 4.2 where the federal character of the rule is important; otherwise, where we are referring to all state or federal rules with the same text, we refer to it simply as Rule 4.2.) Despite the identity of language between the Illinois rule and the federal local rule, there is still a distinction between the two, even if it is a fine one. See, e.g., United States v. Kimbell Foods, Inc., 440 U.S. 715, 728-30 (1979); Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). (This is not an instance where a federal court must decide whether federal preemption principles implicitly require a federal rule, but a rule whose content mirrors state law; we have the easier case where the federal authority has explicitly adopted the state law.) The consequences for federal-state comity of a decision pertaining to one or the other are quite different, for example. Once the federal court adopts the text of the state rules, it has its own professional responsibility standards, and any interpretation it may wish to give the rules is not binding in any sense on the Illinois courts. More importantly for this case, because we are dealing with a potential conflict between a federal local rule and a federal statute, rather than a state rule and a federal statute, the parties' focus on whether the local rule is "preempted" by the FELA is misplaced. Rather, the appropriate question is whether the federal statute supercedes the local rule. Although the concepts of preemption and supercession are closely related, they are distinct doctrines. See United States v. Klubock, 832 F.2d 649, 651 (1st Cir. 1987). Whether the federal statute supercedes the local rule is a question of federal statutory interpretation which we review de novo. Dell v. Board of Education, Township High School District 113, 32 F.3d 1053, 1058 (7th Cir. 1994).

With this correction to the governing analysis in place, we turn to the question whether McGlynn's attempt to contact Bader violated S.D. Ill. Rule 4.2. McGlynn concedes that at first blush the rule appears to prohibit what he did, but he argues that Rule 4.2 for this purpose is superseded by sec. 60 of the FELA, which, by virtue of the Jones Act, 46 U.S.C. App. sec. 688, governs suits by maritime workers for employment-related injuries. See O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 38-39 (1943). Section 60 provides:

Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void . . . .

45 U.S.C. sec. 60.

According to McGlynn, S.D. Ill. Rule 4.2 is exactly the kind of "rule, regulation, or device" that sec. 60 is talking about, because it might have the effect of preventing maritime employees from voluntarily furnishing relevant information to a Jones Act plaintiff's attorney. Because the plaintiff's attorney is a "person in interest" under sec. 60, see, e.g., Sheet Metal Workers Int'l Assoc. v. Burlington Northern R.R. Co., 736 F.2d 1250, 1252 (8th Cir. 1984), McGlynn argues that S.D. Ill. Rule 4.2 necessarily conflicts with sec. 60 and must yield to the latter statute.

If we agreed with McGlynn that there is a square conflict between sec. 60 and S.D. Ill. Rule 4.2, then we would also agree that sec. 60 would take precedence. Federal district courts are authorized to promulgate local rules under both Fed. R. Civ. P. 83 and a federal statute, 28 U.S.C. sec. 2071. Both of these sources state that local rules must be "consistent with Acts of Congress." To the extent a local rule conflicts with a federal statute, this requirement is violated, and so the local rule must be held invalid. See Frazier v. Heebe, 482 U.S. 641, 646 (1987); Stern v. United States District Court for the District of Massachusetts, 214 F.3d 4, 13 (1st Cir. 2000).

We acknowledge that the federal and state courts that have considered the issue are split on the question whether sec. 60 takes precedence over district court rules such as S.D. Ill. Rule 4.2 as well as on the closely related question whether sec. 60 preempts similar state ethical rules. (Implicitly, these courts are also split on the question whether there is a conflict between sec. 60 and Rule 4.2, as there would be no need to consider which takes precedence if they could be reconciled. See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Ware, 414 U.S. 117, 126-27 (1973)). Compare, e.g., Mayfield v. Soo Line R.R., No. 95 C 2394, 1995 WL 715865 (N.D. Ill. Dec. 4, 1995) (unpublished), United Transportation Union Local Unions 385 and 77 v. Metro-North Commuter R.R. Co., No. 94 Civ. 2979 (RWS), 1995 WL 634906 (S.D.N.Y. Oct. 30, 1995) (unpublished), Blasena v. Consolidated Rail Corp., 898 F. Supp. 282 (D.N.J. 1995), and Harper

v. Missouri Pacific R.R. Co., 636 N.E.2d 1192 (Ill. App. Ct. 1994) (holding sec. 60 overrides Rule 4.2), with White v. Illinois Central R.R. Co., 162 F.R.D. 118 (S.D. Miss. 1995), Branham v. Norfolk and Western Railway Co., 151 F.R.D. 67 (S.D.W. Va. 1993), and State ex rel. Atchison, Topeka & Sante Fe R.R. v. O'Malley, 888 S.W.2d 760 (Mo. Ct. App. 1994) (holding no conflict). Courts on both sides of the debate have cited the legislative history of sec. 60: those that find sec. 60 overrides Rule 4.2 argue that sec. 60 was intended broadly to afford plaintiffs the same access to information that their employers have, see, e.g., Blasena, 898 F. Supp. at 284, while those that find no conflict have held that the legislative history shows that Congress was concerned only with the behavior of the railroads themselves, and did not intend to affect external limitations on contact with the employees, such as attorney ethical rules, see, e.g., Branham, 151 F.R.D. at 70-71 & n.18.

With respect, we cannot agree with those who think that an irreconcilable conflict exists between sec. 60 and Rule 4.2. Section 60 forbids rules or devices that prevent employees from furnishing information to a plaintiff or the plaintiff's lawyer, but nothing in sec. 60 necessarily requires that the plaintiff's lawyer be allowed to gather information outside the presence of the employee's attorney. As we discuss further in a moment, not all employees are considered to be represented by a company's lawyers under Rule 4.2. If the employee is not represented, then the plaintiff's attorney would be free to contact that employee. If the employee is represented, however, under Rule 4.2 the plaintiff's attorney would be required to go through the employee's lawyer (who is most likely the company's lawyer) to schedule a deposition or otherwise gain information from the employee. Although this requirement might raise the cost of gathering information from the employee, we cannot say that such a requirement amounts to a rule or device that prevents the employee from furnishing information to the plaintiff's attorney.

Moreover, if we read the word "prevent" in sec. 60 to include the marginal deterrence imposed by Rule 4.2, we would effectively be finding that the FELA and the Jones Act were intended to displace generally applicable ethical rules. We see no evidence of such a radical move in either the text or the background of the statutes. At the time sec. 60 was enacted in 1939, the attorney ethical rule against contacting represented parties was an ingrained part of the legal system. See, e.g., ABA Canons of Professional Ethics, Canon 9 (1908). Had Congress

wanted sec. 60 to override such a long-standing rule of legal ethics, it easily could have said explicitly that it was doing so. That it did not suggests that in enacting sec. 60 Congress was concerned specifically with rules, regulations, or devices concocted by the railroads to stifle employees' contacts with potential FELA claimants, and not with altering long-standing norms of litigation. We will not take silence in this instance as the equivalent of an intent to give sec. 60 such a broad scope that it would preempt the state equivalents to Rule 4.2 and it would supersede federal rules like the one in the Southern District of Illinois.

McGlynn is not willing to concede that his case stands or falls on the broad supersession argument. If S.D. Ill. Rule 4.2 governs his fate, he argues in the alternative that he is excused because of an exception in the rule itself that allows communications between attorneys and represented parties if those communications are "otherwise . . . authorized by law." Section 60 creates just such an exception, in his view. Whether he is right, and sec. 60 authorizes ex parte communications between a FELA plaintiff's lawyer and the defendant's employees, is another question of federal statutory interpretation, which once again receives plenary review. Dell, 32 F.3d at 1058.

Although McGlynn's argument that sec. 60 creates an exception to Rule 4.2 has a certain appeal, in the end it too stretches the statute too far. Quite simply, the exception in Rule 4.2 is for communications "authorized by law," and sec. 60, by its terms, does not authorize anything. Rather, sec. 60 is a prohibition on certain conduct by railroads and maritime employers: these employers are forbidden from enacting rules or regulations that prevent employees from disclosing information to FELA or Jones Act plaintiffs. The phrase "rule, regulation, or device" in sec. 60, read in context, appears to refer only to internal rules or regulations promulgated by employers. Even if it could have a broader application to other prohibitory rules (perhaps because of the word "whatsoever" that appears in the text), there is still nothing to suggest that it was designed to authorize conduct that would otherwise violate general ethical rules. We therefore reject McGlynn's alternate argument based on sec. 60.

B.  Definition of "Represented Party" under Rule 4.2

Taking a different tack, McGlynn next argues that no matter what sec. 60 does or does not mean, S.D. Ill. Rule 4.2 was not violated in this

case because Bader was not a "party represented by another lawyer" as contemplated by the rule. Some version of the ethical rule prohibiting contact with represented parties is in force in every U.S. jurisdiction, see generally Restatement (Third) of the Law Governing Lawyers sec. 158, cmt. b (1998), and the question of how the rule should apply to employees of a corporate party has been a subject of vigorous debate, with different authorities advocating interpretations ranging from a complete ban on any contact with the opponent's employees, to a restrictive interpretation allowing contact with all but the most senior managers, to a variety of functional tests that focus on the employee's role in the events giving rise to the lawsuit. See generally Restatement (Third) of the Law Governing Lawyers sec. 159 reporter's note; Ernest F. Lidge III, The Ethics of Communicating wtih an Organization's Employees, 45 Ark. L. Rev. 801 (1993) (analyzing various approaches). Prior to this case, the Southern District of Illinois had not determined which of the competing interpretations of the rule it would adopt. We afford district courts considerable discretion in interpreting and applying their own local rules, and we will disturb an interpretation only if we are convinced that the district court has misconstrued the rule or has perverted the meaning of the words of the rule. See Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co., 854 F.2d 219, 223 (7th Cir. 1988).

In analyzing the scope of Rule 4.2, the district court adopted the three-part test that the ABA set out in its official commentary to the Model Rules. See ABA Model Rules of Professional Conduct Rule 4.2, cmt. 4 (1995). The district court also relied heavily on a recent decision from the Northern District of Illinois, in which that court adopted and explained the ABA test. See Orlowski v. Dominick's Finer Foods, Inc., 937 F. Supp. 723 (N.D. Ill. 1996). Under the test set out in the Model Rules and Orlowski, a defendant's employee is considered to be represented by the defendant's lawyer, and so is covered by the prohibition in Rule 4.2, if the employee meets any one of the following three criteria: (1) she has "managerial responsibility" in the defendant's organization, (2) her acts or omissions can be imputed to the organization for purposes of civil or criminal liability, or (3) her statements constitute admissions by the organization. See ABA Model Rule 4.2, cmt. 4; see also Orlowski, 937 F. Supp. at 728. Applying this test, the district court found that Bader was represented by Southern Illinois Transfer's lawyers for the purposes of Rule 4.2.

McGlynn argues that the district court erred in applying the ABA's test rather than a much more restrictive test that the Illinois Court of Appeals approved in a 1984 decision. See Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc., 471 N.E.2d 554 (Ill. App. Ct. 1984). In Fair Automotive, the Illinois Appellate Court held that Illinois Rule 4.2 applies only to those members of a corporate defendant's "control group" who have "the responsibility of making final decisions and those employees whose advisory roles to top management are such that a decision would not normally be made without those persons' advice." Id. at 560. Under this test, it is clear that Bader, a mere tugboat pilot who as far as the record discloses had no input into the business decisions of Southern Illinois Transfer, would not have been considered a represented party under Rule 4.2. Nonetheless, the district court considered the Fair Automotive test in its order denying Shane's Rule 60(b) motion and concluded that, because Fair Automotive was decided under a prior version of the Illinois Rules, it is not clear that the Illinois courts would still apply the control group test. In any event, the district court was construing its own local rule, and even though in this case the district court has incorporated Illinois's rules by reference, nothing compelled the district court to adopt the same interpretation of those rules that has been adopted by an intermediate Illinois court. (We see no indication in the materials accompanying the professional conduct rules of the Southern District of Illinois that the district court intended to bind itself to follow the Illinois Supreme Court's interpretations of the Illinois rules, much less to follow decisions from other Illinois courts.) The district court was within its discretion in choosing to follow the ABA test rather than the control group test, and we will not disturb that decision.

We must therefore uphold the district court's finding that Bader was a represented party under Rule 4.2 unless we find that the district court abused its discretion in applying the ABA test to the facts of this case. See Congregation of the Passion, 854 F.2d at 223. The district court found that Bader would be considered a represented party under all three parts of the ABA test. Although we have our doubts as to whether Bader had managerial responsibility sufficient to satisfy the first alternative, we find that he easily satisfied the second and third alternatives, which ask whether his acts or omissions could be imputed to Southern Illinois Transfer and whether his statements about the incident could constitute admissions by the corporation.

The district court found that Bader, as pilot of a Southern Illinois Transfer tug, had managerial responsibility for purposes of S. D. Ill. Rule 4.2, relying primarily on two cases in which this court has held that the highest-ranking officer on a ship is a manager for purposes of the NLRA. The most recent case, Empress Casino Joliet Corp. v. NLRB, 204 F.3d 719 (7th Cir. 2000), is inapposite: the officers in question there supervised 150-200 employees on ships that at times had as many as 2,000 passengers; clearly, those officers had much greater supervisory authority than Bader did on his tug. Bernhardt Bros. Tugboat Serv. v. NLRB, 328 F.2d 757 (7th Cir. 1964), while more helpful, still does not carry the day. Bernhardt Bros. upheld the Board's determination that tugboat pilots who "had authority responsible to direct the crew on their watch" and who had at least some input into the hiring and firing of crew members were managers. Id. at 758. Bernhardt Bros. did not purport to make this ruling as a matter of law, however. In all these cases it is necessary to evaluate the specific facts to determine whether the person holds a management position. Compare Orlowski, 937 F. Supp. at 729 (warning that "not all employees with supervisory or manager-type positions, or titles, fall into the category of 'managerial' employees").

When the facts in this case are examined, it seems very unlikely that Bader had "management responsibility." Although the district court found from the record that Bader typically supervised 2 to 3 deckhands, it does not appear that he had any authority to hire or fire the deckhands or to assign work to them; rather, the type of discretion he exercised over the deckhands was "not that of the supervisor but that exercised by the more experienced employee over one who is less skilled." Southern Illinois Sand Co., 137 NLRB 1490, 1492 (1962) (holding tug pilot was not a manager). If Bader had supervisory authority at all, it seems his role was akin to that of a foreman, which is not generally considered a management position. Finally, Bader was a member of a collective bargaining unit, which is strong evidence that Southern Illinois Transfer did not consider him to be a manager.

Even if the district court abused its discretion in determining that Bader had managerial responsibility, however, the error makes no difference, because the district court was surely correct to find that Bader was a represented party under the other two parts of the ABA test. Under the second part of the ABA test, an employee is considered to be represented by the corporation's lawyer if the employee's

acts or omissions in the matter at issue can be imputed to the corporation. See ABA Model Rule 4.2, cmt. 4. In this case, Shane is trying to show, among other things, that Southern Illinois Transfer was negligent in failing to require Kenneth to wear a life preserver while working and in allowing the work to be performed despite the fact that there were too few deckhands available. Bader was responsible for overseeing the work that was being done on the barge on the day Kenneth died, and it is likely that Bader's decisions about whether to require life preservers and whether the work could be done by only two employees would be imputed to Southern Illinois Transfer.

Similarly, the third part of the ABA test holds that an employee is a represented party if the employee's statements about the relevant matters could constitute admissions on the part of the corporate party. See ABA Model Rule 4.2, cmt. 4. Bader's statements about whether the work on his tug was being performed in a safe manner on the day Kenneth died would most likely be considered admissions by Southern Illinois Transfer on this subject, once again bringing Bader within the scope of those who are considered to be "represented" under the rule. See Fed. R. Evid. 801(d)(2)(D) (defining "admission by party-opponent" to include "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). We cannot say that the district court abused its discretion in determining that Rule 4.2, as the court interpreted it, applied to Bader on the facts of this case.

III

For all these reasons, we agree with the district court that McGlynn's conduct in attempting to contact Bader on the evening before his deposition violated S.D. Ill. Rule 4.2. Nevertheless, we are concerned that the district court's decision to dismiss the case with prejudice may have been too harsh a response to what appears to have been an honest but misguided attempt to comply with the ethical rules. Although we review a district court's choice of sanction only for abuse of discretion, see Barnhill v. United States, 11 F.3d 1360, 1367 (7th Cir. 1993), we have also observed that a sanction of dismissal with prejudice "should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." Id. We are unable to say on the record before us that those criteria were met in this case.

At the time McGlynn made his call to the Bader household, neither this court nor the Southern District of Illinois had resolved the apparent conflict between sec. 60 of the FELA and Rule of Professional Conduct 4.2. The courts that had considered the issue were almost evenly split, and the only two courts from Illinois to have considered the issue had held that sec. 60 preempted Illinois Rule 4.2. See Mayfield v. Soo Line R.R., No. 95 C 2394, 1995 WL 715865 (N.D. Ill. Dec. 4, 1995) (unpublished); Harper v. Missouri Pacific R.R. Co., 636 N.E.2d 1192 (Ill. App. Ct. 1994). McGlynn thus could have concluded in good faith that sec. 60 either displaced S.D. Ill. Rule 4.2 or authorized his conduct. Similarly, there was legitimate uncertainty about the way the rule applied to employees of corporate parties at the time McGlynn acted. McGlynn reasonably could have believed that Bader would not be considered a party for purposes of S.D. Ill. Rule 4.2. In those circumstances, a dismissal with prejudice based solely on McGlynn's attempt to contact Bader would have been an abuse of discretion.

It is not clear, however, how central a role McGlynn's violation of Rule 4.2 played in the district court's choice of sanction. It appears to have been the primary factor, but the court also referred generally to other reasons for the dismissal in its various rulings. We are unable to determine from the record before us what role, if any, these other considerations played in the district court's choice of sanction. Most significantly, the defendant has alleged not only that McGlynn improperly attempted to contact Bader, but also that both McGlynn and Shane improperly attempted to influence Bader's deposition testimony. Of course, if Shane or McGlynn (or both) attempted to influence a witness's testimony, rather than merely to interview Bader to learn what information he had about the accident, that conduct would be a serious infraction that could have warranted a dismissal with prejudice. But the district court never made any factual findings about this allegation, which makes it impossible for us to tell on the basis of the record before us whether any such thing happened. On remand, the district court should conduct additional proceedings to determine precisely what transpired during Shane's conversations with Bader.

In addition, the district court noted that McGlynn and Shane had made a number of errors earlier in the litigation, including initially filing the case with the wrong plaintiff and failing to respond in time to discovery requests. The district court may have relied on the

cumulative effect of these errors, in conjunction with the Rule 4.2 violation, in determining that a dismissal with prejudice was warranted. Although these errors in themselves do not seem to be the kind of "clear record of delay or contumacious conduct" that would warrant a dismissal with prejudice, the district court is of course free to consider the entire history of the case in assessing the appropriate sanction on remand.

For the foregoing reasons, the judgment of the district court is Reversed and Remanded for further proceedings consistent with this opinion. Circuit Rule 36 will apply on remand.